# IN THE COURT OF APPEALS OF IOWA

No. 20-1251
Filed August 4, 2021

**LINUS F. VOVES and LINDA K. VOVES,**
    Plaintiffs-Appellees,

**vs.**

**TYLER HANSEN and NOELLE HANSEN,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Chickasaw County, Laura Parrish, Judge.

Tyler and Noelle Hansen appeal a summary judgment ruling quieting title to certain land. **REVERSED AND REMANDED.**

Jeremy L. Thompson of Putnam, Thompson & Casper, P.L.L.C., Decorah, for appellants.

Siobhan Briley of Pugh Hagan Prahm PLC, Coralville, for appellees.

Considered by May, P.J., and Greer and Schumacher, JJ.

**MAY, Presiding Judge.**

This case is about a small triangle of farm land, about 0.2 acres. Linus and Linda Voves filed this action against their neighbors, Tyler and Noelle Hansen, to quiet title to the triangle under theories of mutual acquiescence and adverse possession. The Voveses also claim the Hansens are liable for trespassing on the triangle. The district court granted summary judgment in favor of the Voveses. The Hansens appeal.



The photo above shows the land at issue.[1]  The Hansens hold legal title to the land marked as 2050 Woodland.[2]  And the Voveses hold legal title to the land marked as the Voves parcel.  These points are undisputed.  The dispute centers on the triangle outlined in red.  It is titled in the Hansens' names.  Even so, the Voveses claim that the railroad right-of-way has long been recognized as the true divider between their property and the Hansens'.  They claim that, when they bought their parcel in 1978, they *thought* they were buying the entire nineteen-acre field—including the triangle—that lies north of the right-of-way.  And in decades that followed, they openly farmed and otherwise used and profited from the whole field—including the triangle—without any objection from the Hansens or their predecessors.  Indeed, they received no objection from the Hansens or their predecessors until 2019 when Tyler Hansen told the Voveses they could no longer farm the triangle.  By then, the Voveses claim, *they* had already become owners of the triangle through adverse possession, boundary by acquiescence, or both.  The Voveses also claim that, because they now own the triangle, the Hansens trespassed when they entered to dig a hole.

The Hansens see things differently.  Although they acknowledge the Voveses have used the triangle, they deny the Voveses ever became its *owners*.  Rather, they claim the Voveses merely used the triangle with the *consent* of the

---

[1] We took this photo from an exhibit to Voveses' statement of undisputed facts. The colored lines, such as the red line defining the triangle, were part of the original exhibit.  We added the white text boxes and north arrow.

[2] Tyler Hansen's grandparents, Willis and Patricia Hansen, platted 2050 Woodland as part of establishing the Woodland Estates subdivision in the mid-1970s.  In 2015, the Hansens purchased 2050 Woodland from Willis.  In 2018, Willis deeded the triangle to the Hansens.

Hansens and their predecessors, who remained the triangle's owners. And because the Hansens owned the triangle when they dug a hole in the triangle, their digging work could not have been a trespass.

At summary judgment, the district court found the Voveses had established ownership of the triangle under the theory of boundary by acquiescence. And so the court also found that the Hansens' entry was a trespass. The court did not reach the Voveses' theory of adverse possession.

On appeal, the Hansens contend the district court erred in granting summary judgment in favor of the Voveses. Our review is "for correction of errors at law." *Rieder v. Segal*, 959 N.W.2d 423, 425 (Iowa 2021). The district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 425–26 (citation omitted). "In reviewing the district court's decision, we look at the summary judgment record in the 'light most favorable to the nonmoving party.'" *Id.* at 426 (citation omitted). "The court must also consider on behalf of the nonmoving party every legitimate inference that can be reasonably deduced from the record." *Peak v. Adams*, 799 N.W.2d 535, 542–43 (Iowa 2011). "If reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists." *Id.* at 543.

We first consider whether the district court was correct in finding the Voveses established their boundary by acquiescence claim as a matter of law. *See In re Det. of Anderson*, 895 N.W.2d 131, 138 (Iowa 2017) ("When we review a district court's ruling, [w]e first examine the basis upon which the trial court

rendered its decision, affirming on that ground if possible." (alteration in original) (citation omitted)). Boundary by acquiescence claims are governed by Iowa Code chapter 650 (2019). Section 650.14 provides: "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established." Acquiescence is "the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them." *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980). The burden is on the Voveses to prove "mutual acquiescence by clear proof." *Davis v. Hansen*, 224 N.W.2d 4, 6 (Iowa 1974).

We conclude the current record does not establish mutual acquiescence *as a matter of law*. Viewing the record in the light most favorable to the Hansens, and considering every legitimate inference that can be reasonably deduced in their favor, we conclude a reasonable fact finder could infer the parties did not recognize the right-of-way as the boundary between their respective properties. Instead, a reasonable fact finder could infer the Voveses merely used the triangle with consent[3] of its titled owners, the Hansens and their predecessors. For example, there is evidence that taxes on the triangle have always been paid by the Hansens or their predecessors, not the Voveses. Also, it is undisputed the Voveses have

---

[3] The Voveses note there was no written agreement concerning the triangle. From this, the Voveses infer that Iowa Code section 622.32 prevents the Hansens from proving the Hansens or their predecessors gave the Hansens consent to use the triangle. We disagree. By its plain terms, section 622.32(3) only applies to "contracts" other than leases "for the creation or transfer of any interest in lands." The Hansens are not arguing there was any "creation or transfer of any interest" in the triangle. They are only arguing that they and their predecessors let the Voveses use the triangle.

historically placed "no trespassing signs" around land they believed to be their own. And yet the Voveses consciously chose *not* to place "no trespassing signs" immediately in front of or around the triangle. From this, one could reasonably infer the Voveses did not believe the triangle was part of their property.

So we conclude there is a genuine issue of material fact that precludes summary judgment under a theory of mutual acquiescence. As the Voveses point out, however, we could still affirm "if there is an alternative ground, raised in the district court and urged on appeal, that can support the court's decision." *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 812 (Iowa 2000); *see also Deeds v. City of Marion*, 914 N.W.2d 330, 350 n.9 (Iowa 2018); *St. Malachy Roman Cath. Congregation of Geneseo v. Ingram*, 841 N.W.2d 338, 351 n.9 (Iowa 2013); *Duck Creek Tire Serv., Inc. v. Goodyear Corners, L.C.*, 796 N.W.2d 886, 893 (Iowa 2011). Specifically, the Voveses argue we could affirm under a theory of adverse possession because it was both raised below and is urged again in their appellate brief. We agree with the Voveses' procedural analysis. We proceed to the merits.

"A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Tr. Est. by Warner v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988). "Proof of these elements must be 'clear and positive.'" *Id.* (citation omitted). "Since the law presumes possession is under a regular title, the doctrine of adverse possession is strictly construed." *Id.*

Applying these principles here, we conclude the Voveses have not established adverse possession by "clear and positive" evidence *as a matter of law. See id.* "A claimant's possession of land, to be hostile, . . . must be

incompatible with or in defiance of the rights of others." 3 Am. Jur. 2d Adverse Possession § 40. Hostile possession "imports that the claimant is in possession *as owner*, in contradistinction to holding in recognition of or subordination to the true owner." *Id.* (emphasis added). Here, however, the record would support a reasonable inference that the Voveses did not possess the triangle "as owner[s]." *See id.* As discussed, this inference could find support in evidence that the Voveses placed "no trespassing" signs around the land they owned *but* consciously chose not to place "no trespassing" signs around the triangle. *See also Council Bluffs Sav. Bank v. Simmons*, 243 N.W.2d 634, 637 (Iowa 1976) (noting use of property with the owner's permission "never ripen[s] into title by adverse possession").

For the reasons explained, we reverse the grant of summary judgment and the establishment of the railroad right-of-way as the legal boundary. Accordingly, we also reverse the grant of summary judgment as to the trespass claim. We remand for trial on the Voveses' claims.

**REVERSED AND REMANDED.**